```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CARINA CRUZ,                                                :
                                    Plaintiff,              :
                                                            :    19 Civ. 11836
            -against-                                       :
                                                            :    OPINION AND ORDER
SEIU LOCAL 32BJ, et al.,                                    :
                                    Defendants.             :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Carina Cruz, acting *pro se*, brings this action alleging that her employer, Defendant ABM Industry Groups, LLC ("ABM"), and the union to which she belongs, SEIU, Local 32BJ (the "Union") discriminated against her on the basis of gender, race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); New York City Human Rights Law, N.Y. City Admin Code § 8-101 *et seq.* ("NYCHRL"); and the National Labor Relations Act, 29 U.S.C.S. § 151 *et seq.*, ("NLRA"). ABM moves to dismiss all claims against it, and the Union moves to dismiss all claims against it except for a Title VII discrimination claim stemming from allegations that the Union arbitrated a White employee's workload grievance but declined to arbitrate substantially similar grievances that Plaintiff filed. For the reasons stated below, ABM's motion to dismiss is granted, and ABM is dismissed from the case. The Union's motion to dismiss is granted, except for the NYSHRL and NYCHRL discrimination claims based on the alleged disparate treatment of workload grievances.

I.     BACKGROUND

The following facts are taken from the Complaint, First Amended Complaint, Second Amended Complaint and related exhibits -- together construed as the "Complaint" -- and are

assumed to be true for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020) (assuming the complaint's factual allegations to be true for purposes of a Rule 12(b)(6) motion to dismiss); *see also Brooks v. Westchester Cnty. Jail*, No. 19 Civ. 10901, 2019 WL 6735607, at *1 (S.D.N.Y. Dec. 11, 2019) (finding that "[c]onstrued together, plaintiff's complaints may state a valid claim for relief against defendant"). Pertinent facts are also drawn from documents referenced and relied on in the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Plaintiff is an Hispanic female from the Dominican Republic. As of June 2020,[1] she had been a member of the Union for fifteen years and had been employed by ABM as a janitor at 300 Madison Avenue in Manhattan for eight years. The terms and conditions of Plaintiff's employment are governed by a collective bargaining agreement (the "CBA") between the Union and the Realty Advisory Board on Labor Relations, Inc. ("RAB"), a multi-employer bargaining group of which ABM is a member. The CBA governs the size of employees' workloads and contains a grievance and arbitration procedure for alleged violations of the CBA and statutory discrimination claims.

This action relates to Plaintiff's complaints regarding her workload and allegedly discriminatory and retaliatory acts related to those complaints. In 2015, Plaintiff began lodging complaints with the Union regarding her workload at ABM. As a result of her complaints, ABM gave Plaintiff more onerous work assignments than her co-workers. In addition, Plaintiff received a suspension for failing to inform the company of an absence, as well as warnings for minor or contrived infractions, including complaints that she was wearing improper shoes, gossiping against company policy and arriving late. When Plaintiff did not want to attend the

---

[1] Plaintiff filed the Second Amended Complaint on June 22, 2020.

December 2017 Christmas party, she was instructed to stay in the locker room until the party ended. Also, Plaintiff was not allowed to use her phone when coworkers were permitted to use their phones.

In May 2017, Carlos Martin, a Union Shop Steward, and other individuals sent a letter to ABM regarding Plaintiff (the "Letter"). The Letter accuses Plaintiff of threatening her supervisor and calls for ABM to fire Plaintiff. Plaintiff learned of the Letter and, on August 30, 2017, filed charges with the National Labor Relations Board ("NLRB") against the Union, alleging that the Letter was an attempt to cause ABM to discriminate against her. After investigating the charges, the NLRB dismissed them on the grounds that the Letter was (1) an isolated incident and (2) not authorized by the Union. Plaintiff also filed with the NLRB other unrelated charges against the Union for which she and the Union entered into Settlement Agreements. In March 2018, the Union apologized to Plaintiff for the Letter and removed various warnings from Plaintiff's record. Despite this apparent resolution with the Union, Plaintiff's relationship with certain Union members remained strained. In September 2018, Plaintiff unsuccessfully ran for a position in the Union election. After she lost, Sandra Henao, a Union Shop Steward, sent a text message to a co-worker stating that Plaintiff was a "stupid Dominican" and "would never win a Union election."

In May 2018, Plaintiff again complained to the Union about the size of her workload. In November 2018, ABM informed Plaintiff that it would re-section work routines. This re-sectioning increased Plaintiff's workload. In January 2019, Plaintiff submitted to the Union workload grievance numbers 40014-18 and 41042-18 (collectively, the "2019 Workload Grievance"), alleging that her workload violated the CBA. Around the same time, Plaintiff's White co-worker, Feruze Borici, whose workload was identical in size to Plaintiff's, also

submitted a workload grievance. In March 2019, the Union chose to arbitrate Borici's workload grievance but not to arbitrate Plaintiff's 2019 Workload Grievance.

On July 22, 2019, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against the Union (the "EEOC Charge"). The EEOC Charge alleges that, in March 2019, the Union discriminated against Plaintiff on "the basis of race and national origin in violation of Title VII" by choosing to arbitrate Borici's workload grievance but not Plaintiff's 2019 Workload Grievance. On October 1, 2019, the EEOC issued a Dismissal and Notice of Rights (the "Notice of Right to Sue") granting Plaintiff the right to file a lawsuit against the Union under federal law, based on the EEOC Charge. Plaintiff received the Notice of Right to Sue on October 5, 2019. Plaintiff filed this action on December 23, 2019.

## II.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "[A]ll factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor," *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted), but no effect is given to legal conclusions, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010)). Because Plaintiff is proceeding *pro*

4

*se*, her papers are construed liberally and interpreted "to raise the strongest arguments that they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017); *accord Acevedo v. Harvard Maint. Co.*, No. 20 Civ. 721, 2021 WL 1224898, at *2 (S.D.N.Y. Mar. 31, 2021).

**III.   DISCUSSION**

Liberally construing the *pro se* pleadings, Plaintiff's claims against ABM assert discrimination based on gender, race and national origin in violation of Title VII, the NYSHRL and NYCHRL, and her claims against the Union assert breach of the duty of fair representation under the NLRA, as well as violations of Title VII, the NYSHRL and NYCHRL.  All claims are dismissed except the Title VII, NYSHRL and NYCHRL claims against the Union regarding the 2019 Workload Grievance.

**A.  Title VII Claims**

**1.  Exhaustion of Administrative Remedies**

All Title VII claims against ABM and the Union -- except the Title VII claims regarding the 2019 Workload Grievance against the Union (which are not at issue on this motion to dismiss) -- are dismissed pursuant to Rule 12(b)(6) because Plaintiff did not exhaust her administrative remedies.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F. 3d 378, 385 (2d Cir. 2015) (failure to exhaust administrative remedies does not deprive the court of subject matter jurisdiction); *Holmes v. YMCA of Yonkers, Inc.*, No. 19 Civ. 620, 2020 WL 85389, at *1, n.2 (S.D.N.Y. Jan. 7, 2020) (same).

To assert a Title VII claim in federal court, a plaintiff is "required to exhaust the administrative remedies provided by the statute." *Duplan v. City of N.Y.*, 888 F.3d 612, 621 (2d Cir. 2018); *accord Malloy v. Pompeo*, No. 18 Civ. 4756, 2020 WL 5603793, at *10 (S.D.N.Y.

Sept. 18, 2020). As part of this requirement, a Title VII plaintiff "must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' 42 U.S.C. § 2000e-5(e)(1), and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency, *id*. § 2000e-5(f)(1)." *Duplan*, 888 F.3d at 621-22; *accord Brown v. Wetz*, No. 18 Civ. 11178, 2021 WL 964922, at *5 (S.D.N.Y. Mar. 15, 2021). "[C]laims in a civil lawsuit must either have been expressly asserted in the employee's EEO complaint or else be 'reasonably related' to the allegations raised therein." *Henry v. McDonald*, No. 15 Civ. 4030, 2021 WL 1309729, at *8 (S.D.N.Y. Mar. 31, 2021). Claims are "reasonably related" if they "arise during the pendency of an EEOC investigation *or* a timely filed federal case," *Duplan*, 888 F.3d at 624, and fall "within the scope of the EEOC investigation," *Thomas v. Buffalo Club*, No. 17 Civ. 1050, 2021 WL 716703, at * 2 (S.D.N.Y. Feb. 24, 2021). The burden of pleading and proving failure to exhaust administrative remedies pursuant to Title VII "lies with [the] defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). Claims are not usually dismissed on this ground unless a failure to exhaust administrative remedies is apparent from the face of the complaint. *See Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 456 (S.D.N.Y. 2014) (collecting cases).

  The Amended Complaint, which names only ABM as a Defendant, expressly states in response to a question that Plaintiff did not file any EEOC charge against ABM and did not receive a Notice of Right to Sue from the EEOC. While a district court may adjudicate a Title VII claim against a defendant not named in an EEOC charge where there is a "clear identity of interest between the unnamed defendant and the party named in the administrative charge," *Kurlender v. Ironside Grp., Inc.*, No. 18 Civ. 3839, 2019 WL 1318363, at * 10 (E.D.N.Y. Jan. 4,

2019), *report and recommendation adopted*, 2019 WL 1317405 (E.D.N.Y. Mar. 22, 2019) (citing *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991)), ABM and the Union lack a clear identity of interest. "[C]ourts in this Circuit have consistently held that unions and employers lack the clear identity of interest required to waive . . . Title VII . . . requirements." *Percy v. N.Y. (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 591 (S.D.N.Y. 2017) (internal quotation marks omitted) (collecting cases). Plaintiff does not raise, nor does there appear to be, any equitable defense to excuse the failure to exhaust administrative remedies against ABM. *See generally Fowlkes*, 790 F.3d at 385-387 (discussing possible equitable defenses in the context of EEOC Title VII exhaustion). Accordingly, the Title VII claims against ABM are dismissed for failure to exhaust administrative remedies.

Plaintiff did file an EEOC charge against the Union, but that charge concerns only the Union's allegedly disparate treatment of the 2019 Workload Grievance.[2] The Complaint's remaining allegations of discrimination pertain to conduct that pre-dates the 2019 Workload Grievance but is not included in the EEOC charge. Even if the EEOC Charge were somehow construed to include Plaintiff's allegations that a Union Shop Steward tried to have her fired in May 2017 or that a different Union Shop Steward sent her an inappropriate text message in September 2018 (*i.e.*, the only other conduct alleged in the Complaint that could potentially be

---

[2] The EEOC Charge references only the alleged disparate treatment of the 2019 Workload Grievance and states:

I filed a grievance with Respondent alleging a violation of the collective bargaining agreement. I allege that Respondent failed to represent me in my grievance (about the workload). A similarly situated white individual (Feruze Borici) filed an identical grievance and the Respondent chose to represent her all the way to arbitration. I allege the Respondent failed to represent me on the basis of race and national origin. I allege I was subjected to discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964 as amended.

viewed as Union conduct), such claims would be untimely because the EEOC Charge was filed more than 300 days after the conduct occurred. *See* 42 U.S.C. § 2000e-5(e)(1). Consequently, the Title VII claims against the Union -- except the Title VII claim regarding the Union's allegedly disparate treatment of the 2019 Workload Grievance -- are dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies.

### B.  NYCHRL and NYSHRL Claims

#### 1.  Preemption

Plaintiff's NYCHRL and NYSHRL claims against the Union regarding allegedly disparate treatment of the 2019 Workload Grievance are not preempted by Section 301(a) of the Labor Management Relations Act of 1947 ("Section 301"). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This statute "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on an analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotation marks omitted); *accord Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019). Section 301 supports complete preemption of state law claims under certain circumstances:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles -- necessarily uniform throughout the Nation -- must be employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405, 406 (1988); *accord Jones-Cruz v. Rivera*, No. 19 Civ. 6910, 2021 WL 965036, at *4 (S.D.N.Y. Mar. 14, 2021).  In contrast, preemption does not occur when an individual covered by a collective-bargaining agreement "assert[s] legal rights *independent* of that agreement."  *Caterpillar Inc.*, 482 U.S. at 396; *accord Whitehurst*, 928 F.3d at 207-08 (holding that Section 301 preempted the NYSHRL and NYCHRL claims because interpretation of the collective bargaining agreement was necessary to resolve the state and local claims, and the collective bargaining agreement -- not the NYSHRL or NYCHRL -- was "the source of the rights [the plaintiff sought to enforce]").  "A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.'"  *Whitehurst*, 928 F.3d at 207 (citing *Lingle*, 486 U.S. at 407).

Here, the NYSHRL and NYCHRL claims alleging discrimination based on disparate treatment of the 2019 Workload Grievance are not preempted because the resolution of those claims does not depend upon the meaning of the CBA.  Although the CBA creates parameters for workload distribution and outlines conditions of employment, interpretation of the CBA's terms is unnecessary to resolve Plaintiff's claims.  The Complaint alleges that Plaintiff's and Borici's respective workloads were identical in size and that the only material difference between their respective grievances is the race of the filer.  Proof of Plaintiff's NYSHRL and NYCHRL discrimination claims will depend upon the "actions, statements and motivations" of the Union, not upon the terms of the CBA.  Consequently, those claims are not preempted.  *See Rodriguez v. Newmark & Co. Real Estate*, No. 19 Civ. 9607, 2020 WL 3073259, *3 (S.D.N.Y. June 10, 2020) (finding that plaintiff's claims that defendants sexually harassed him, subjected him to a hostile work environment on the basis of his gender and retaliated against him for

9

reporting harassment were not preempted by § 301 because they did not require interpretation of the related collective bargaining agreement).

### 2. Failure to State a Claim

#### i. Discrimination

The motion to dismiss the NYCHRL and NYSHRL discrimination claims against the Union with respect to the allegedly disparate treatment of the 2019 Workload Grievance is denied because the claims are sufficiently pleaded. The NYCHRL and NYSHRL claims against ABM are dismissed because they are not sufficiently pleaded.

To state a claim for employment discrimination under the NYSHRL,[3] a complaint must "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *accord Farmer v. Shake Shack Enters., LLC,* 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020). To do this, a complaint must allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*.

NYCHRL claims are analyzed "separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *accord Brown v. Montefiore Med. Ctr.*, No. 19 Civ. 11474, 2021 WL 1163797, at * 7

---

[3] In June 2019, New York State amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also* A8421/S6577 (as amended by S6594/A8424). Because the amendments apply to claims accruing after October 11, 2019, *see Wellner*, 2019 WL 4081898, at *5 n.4; A8421/S6577 (as amended by S6594/A8424), the date that the amendments go into effect, they do not apply to Plaintiff's NYSHRL claim.

(S.D.N.Y. Mar. 25, 2021).  To state a claim for employment discrimination under NYCHRL, a complaint must allege that an employer treated an employee "less well than other similarly situated employees, at least to some degree for discriminatory reasons."  *Brown*, 2021 WL 1163797 at *7.  While NYCHRL claims are construed more liberally than NYSHRL claims, they still require specific allegations that discrimination on the basis of race, gender or national origin play a role in the defendant's conduct.  *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (affirming district court's grant of summary judgment on the NYCHRL claim when plaintiff did not present evidence that discrimination played a role in defendants' actions); *Bhatnagar v. The Parsons School of Design at the New School*, No. 20 Civ. 2321, 2021 WL 2333243, at *3 (S.D.N.Y. June 8, 2021) (dismissing NYCHRL claim where the complaint did not plausibly allege a minimal inference of discrimination due to Plaintiff's race or national origin).

The Complaint states a claim against the Union for discrimination pursuant to NYSHRL and NYCHRL based on allegations that the Union chose to arbitrate Borici's workload grievance but not Plaintiff's.  The Complaint alleges that Plaintiff and Borici had workloads of identical size and that the difference between the 2019 Workload Grievance and Borici's workload grievance is that Borici is White.  This is enough to state a claim for discrimination based on race under either NYSHRL or NYCHRL.  *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from circumstances including . . . more favorable treatment of employees not in the protected group." (internal quotation marks omitted)); *Daniels v. City of N.Y.*, No. 17 Civ. 9960, 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (dismissing NYCHRL and other claims because the complaint failed to allege sufficient

facts to show that alleged comparators were comparable and that disparate treatment was therefore discriminatory).[4]

The Complaint does not state a sufficient discrimination claim against ABM under either the NYSHRL or NYCHRL as the relevant factual allegations are too general and conclusory. The Complaint generally alleges that "[w]omen workers, including Plaintiff, are issued warnings for more minor infractions than the male employees, are issued warnings that are false, are given less favorable work assignments, and, in general, are treated more harshly than their male colleagues." The Complaint does not identify the women workers or their male comparators, nor does it detail specific instances of less favorable treatment. *See, e.g., Wooding v. Winthrop Univ. Hosp.*, No. 16 Civ. 4477, 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017) (granting motion to dismiss because the complaint failed to state comparators' positions, responsibilities, qualifications or quality of their work); *Yan v. Ziba Mode Inc.*, No. 15 Civ. 47, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing disparate treatment claim where plaintiff "fail[ed] to plead any facts regarding how [the plaintiff's comparators'] identities, experience levels, and conduct compared to [the p]laintiff's"). The Complaint's specific allegations that

---

[4] The only other non-conclusory allegation regarding discriminatory conduct conceivably against the Union is a Union Shop Steward's inappropriate text message referencing Plaintiff's national origin. Even under the more lenient standard of review applied to NYCHRL claims, this allegation is insufficient to plead a claim because it does not rise to the level of a hostile work environment. *See Mihalik*, 715 F.3d at 110-11 (to support an NYCHRL discrimination claim, including alleging a hostile work environment, a plaintiff must show that she was "treated 'less well' -- because of a discriminatory intent," but courts may "dismiss truly insubstantial cases" where it is clear that the conduct was trivial, insubstantial or petty); *Mullins v. Consol. Edison Co. of New York, Inc.*, No. 13 Civ. 6800, 2015 WL 4503648, at *13 (S.D.N.Y. July 22, 2015) (single statement that Plaintiff "speaks well" was insufficient to establish a hostile work environment under the NYCHRL); *see also* N.Y.C. Admin. Code § 8-107(13)(b) (NYCHRL provision which imputes employees' discriminatory conduct to the employer only if the employer "knew of," and "acquiesced" or "failed to take immediate and appropriate corrective action").

ABM treated Plaintiff poorly are insufficient to state a claim of discrimination because the Complaint does not allege facts that plausibly show discriminatory animus.

### ii. Retaliation

The Complaint does not state a claim of retaliation against ABM under either NYSHRL or NYCHRL.  To state a claim of retaliation under either NYSHRL or NYCHRL, "a plaintiff-employee must [plead] that (1) she engaged in protected activity; (2) the [defendant] was aware of this activity; (3) the [defendant] took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action."  *McHenry v. Fox News Network, LLC,* 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020); *see also Duplan*, 888 F.3d at 625 (stating the pleading standard for an NYSHRL retaliation claim).  The scope of what constitutes a "protected activity" is broader under NYCHRL, *McHenry*, 501 F. Supp. 3d at 66.  "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 112; *accord, Brown*, 2021 WL 1163797 at *11.

Even under the broader scope of the NYCHRL, the Complaint does not sufficiently plead a retaliation claim because it does not allege facts plausibly supporting the cause-and-effect sequence required to support such a claim.  Here, the Complaint alleges examples of unfavorable actions ABM took against Plaintiff in 2017, including a suspension and contrived warnings regarding her shoes, gossiping and punctuality.  However, the Complaint does not allege any specific instances when Plaintiff complained about or opposed ABM's discrimination.  Although the Complaint alleges that Plaintiff "complained frequently" about the behavior of her former supervisor, who demeaned and disrespected women, the Complaint does state when or to whom

13

she complained or describe the particular substance of the complaints. Similarly, the Complaint does not allege facts showing that the suspension and warnings were in retaliation for Plaintiff's complaints. For example, the Complaint does not identify some particular supervisor was aware of a complaint by Plaintiff, and who shortly after becoming aware, subjected Plaintiff to a contrived warning. In sum, the Complaint does not allege sufficient facts to support a claim that ABM took action against Plaintiff in retaliation for her complaints.

### 3. Timeliness of Surviving Claims

The Complaint's surviving NYSHRL and NYCHRL claims against the Union -- i.e., those based on disparate treatment of the 2019 Workload Grievance -- are plainly timely. Claims alleging violations of NYSHRL and NYCHRL are subject to a three-year statute of limitations. *See* N.Y.C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). The allegedly discriminatory treatment occurred on March 14, 2019. Plaintiff commenced this action approximately nine months later in December 2019. The initial Complaint included the surviving NYSHRL and NYCHRL claims against the Union. These claims were timely filed well within the three-year statute of limitations.

### C. Timeliness of Breach of the Duty of Fair Representation Claim under the NLRA

The Complaint's claims that the Union breached the duty of fair representation are dismissed as untimely. "Under federal common law, unions owe their members a duty of fair representation [], which derives 'from the union's statutory role as exclusive bargaining agent.'" *Dillard v. SEIU Loc. 32BJ*, No. 15 Civ. 4132, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neil*, 499 U.S. 65, 74 (1991)). This duty is "implicitly guaranteed by the NLRA, 29 U.S.C. § 185(a)." *Fleischer v. Barnard Coll.*, No. 19 Civ. 10739, 2020 WL 7360251, at * 4 (S.D.N.Y. Dec. 15 ,2020) (citing *DelCostello v. Int'l Bhd. of Teamsters*,

14

462 U.S. 151, 164-65 (1983)).  A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory or taken in bad faith.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387-88 (2d Cir. 2015) (*citing Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67).  The statute of limitations for a claim of breach of the duty of fair representation is six months.  *Whitehurst*, 928 F.3d at 205 (citing *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997)).

Even assuming that all claims for breach of the duty of fair representation relate back to the date when the original complaint was filed, claims that the Union breached its duty of fair representation are time-barred.  The most recent wrongful conduct Plaintiff alleges is the disparate treatment of the 2019 Workload Grievance, which occurred on March 14, 2019.  The original complaint was filed more than six months later on December 23, 2019.

### D. Leave to Amend

For the reasons set forth above, the only remaining claims to survive this motion are the Title VII, NYSHRL and NYCHRL discrimination claims against the Union regarding the 2019 Workload Grievance.  The Union's motion to dismiss is granted as to discrimination claims based on any other conduct, and on the NLRA claim alleging breach of the duty of fair representation.  ABM's motion to dismiss is granted in full.

A "court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and alterations omitted).  "Where a proposed amendment would be futile, leave to amend need not be given."  *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.

15

2011); *see also Chunn v. Amtrak,* 916 F.3d 204, 208 (2d Cir. 2019) (holding that repleading would be "futile" in light of *pro se* complaint's substantive deficiencies).

### 1. Claims against the Union

Plaintiff may ask the Court's permission to add a claim against the Union concerning workload grievance numbers 48485-1862580-19 and 48485-18, which allegedly relate to the same workload complaint at issue here and which the Union closed on March 4, 2019, and October 5, 2020, respectively. If Plaintiff wishes to add these grievances to this lawsuit she should file a letter with the Court attaching a copy of each grievance, and provide a separate explanation about each one: how this grievance relates to the matters at issue in this lawsuit, and detailing what the Union did that she believes was unlawful and why it was unlawful. For example, Plaintiff should not simply say that that the Union's closing the workload complaint was "in bad faith" or "discriminatory," if that is her claim. She should explain what that means -- what exactly did they do that shows bad faith, or how was the closure discriminatory, who was treated differently and how, and on what date did this wrongful conduct occur.

For the reasons discussed above, it would be futile to attempt to amend the dismissed claims against the Union, namely, the earlier discrimination claims unrelated to the 2019 Workload Grievance, and the alleged violation of the NLRA related to the 2019 Workload Grievance. Plaintiff may not seek leave to amend these claims.

### 2. Claims Against ABM

Plaintiff may ask the Court's permission to amend the NYSHRL and NYCHRL discrimination and retaliation claims against ABM, including (1) specific instances in which

ABM discriminated against women after June 22, 2017,[5] (2) any specific instances in which Plaintiff complained to ABM of discriminatory treatment on the basis of sex, race or national origin and (3) the dates on which the alleged retaliatory conduct by ABM occurred.  In providing this additional information, Plaintiff shall include the following details:

- the names and titles of all relevant persons;
- a detailed factual description of all relevant events, including what each person or entity did or failed to do; and
- the date and time of each relevant event or, if not known, the approximate date and time of each relevant event.

For the reasons discussed above, leave to amend would be futile with respect to the Title VII claims against ABM.  Accordingly, Plaintiff may not amend the Complaint to add allegations to these claims.  However, Plaintiff may amend the Complaint to provide additional facts in support of her NYHRL and NYCHRL claims.

### 3. Application to the Court to Amend the Complaint

If Plaintiff wishes to ask the Court's permission to file a Third Amended Complaint, she shall do so only as described above and provide the necessary information in a letter filed no later than **September 13, 2021**.  If Plaintiff is permitted to amend the complaint, discovery will likely be reopened and the case will be prolonged.  If Plaintiff does not wish to file an amended complaint, she may proceed with the Title VII, NYSHRL and NYCHRL discrimination claims

---

[5] ABM was first named as a Defendant in this action in the First Amended Complaint, filed on June 22, 2020.  In order to be timely, any NYSHRL and NYCHRL claims against ABM must relate to events that occurred on or after June 22, 2017.

against the Union relating to the 2019 Workload Grievance. Discovery is complete on those claims, which are ready for final motions and/or trial.

## IV. CONCLUSION

For the reasons stated above, ABM's motion to dismiss is GRANTED in full; the Union's motion to dismiss is GRANTED IN PART; and if Plaintiff wishes to seek leave to amend, she must do so as described above by **September 13, 2021**. The surviving claims are the Title VII, NYSHRL and NYCHRL claims against the Union, based on the alleged disparate treatment of Plaintiff's 2019 Workload Grievance. The Clerk of Court is respectfully directed to close the motion at Docket No. 103.

Dated: August 12, 2021
      New York, New York

<em>[signature]</em><br>
**LORNA G. SCHOFIELD**<br>
**UNITED STATES DISTRICT JUDGE**