```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CARINA CRUZ,                                                :
                                        Plaintiff,          :
                                                            :      19 Civ. 11836
                    -against-                               :
                                                            :      OPINION AND ORDER
SEIU LOCAL 32BJ, et al.,                                    :
                                        Defendants.         :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Carina Cruz, proceeding pro se, alleges that the union to which she belongs, SEIU, Local 32BJ (the "Union"), discriminated against her on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin Code § 8-101 *et seq.* ("NYCHRL"). Cruz accuses the Union of discriminating against her when it decided not to arbitrate certain of Cruz's workload grievances in contrast to its decision to arbitrate a grievance of her non-Hispanic co-worker. The Union moves for summary judgment. For the reasons below, the motion is granted.

I.  **BACKGROUND**

The background facts below are drawn from the parties' Rule 56.1 statements and other submissions on these motions. The facts are either undisputed or based on evidence in the record drawing all reasonable inferences in favor of Plaintiff, the non-moving party.

Carina Cruz was employed as an office cleaner by ABM Industry Groups, LLC ("ABM") at 300 Madison Avenue from 2012 through December 31, 2019. During the time that Cruz worked for ABM, the Union served as her collective bargaining representative, and Cruz's

employment was governed by a collective bargaining agreement ("CBA") between the Union and the Realty Advisory Board on Labor Relations, Inc.  The relevant CBA contains a provision governing the workloads of office cleaners, which states:  "The employer shall not . . . impose a productivity level on office cleaners which exceeds an average of four thousand (4,000) square feet per hour.  Average square feet per hour shall be computed by dividing the total number of man hours per day into the total cleanable square feet of the building."

Between 2017 and 2018, Cruz filed several grievances while employed by ABM. Relevant to this action are two grievances filed on or about May 10, 2018, and on or about June 5, 2018, in which Cruz asked the Union to pursue workload grievances on her behalf, asserting that she was assigned a work area that exceeded 32,000 square feet, the total area allowed under 4,000 square feet per hour.  The Union assigned these complaints Case Nos. 40014-18 and 41042-18.  On or about July 2, 2018, as part of its investigation, the Union sent representatives, including Miguel Barry-Godin, to measure the area that Cruz was assigned to clean.  Cruz disputes whether the Union's representatives did so accurately.  According to the Union's calculations, Cruz was assigned approximately 33,742 cleanable square feet, although the Union asserts that this figure includes an error that added 685 square feet to Cruz's total cleanable space.  Based on the measurements, Barry-Godin argued to ABM that it should reduce Cruz's workload.

On or about April 19 and August 14, 2018, Feruze Borici, one of Cruz's coworkers at 300 Madison, also filed complaints against ABM concerning the size of her assigned work area. On September 24, 2018, two Union representatives went to 300 Madison to measure the area that Borici was assigned to clean, the thirty-second floor and another floor referred to as "C2."  The Union representatives measured Borici's assigned area as approximately 40,665 square feet.

Around December 2018 or January 2019, ABM changed worker assignments at 300 Madison, a process referred to as "resectioning." Both Cruz and Borici received new assignments as a result. Shortly after Cruz's assigned work area was resectioned, Barry-Godin argued to ABM that it should provide Cruz with additional compensation for the period between May 2018 and January 2019, when she received her new assignment, because of her excessive workload, but ABM refused.

In March 2019, the Union decided to close Cruz's workload grievances in Cases 40014-18 and 41042-18 rather than pursue the grievances to arbitration. Around the same time, the Union decided to arbitrate Borici's workload grievance. The Union says that it had a non-discriminatory reason for treating Cruz and Borici differently, namely the amount of excessive area they had to clean.

On December 23, 2019, Cruz initiated this action. In or around October 2020, the Union notified Borici that it was closing her workload claims as part of larger policy to withdraw as moot grievances that involved work assignments no longer in effect due to the COVID-19 pandemic.

An Opinion and Order, filed August 12, 2021, dismissed all claims against ABM, and all claims against the Union except for Title VII, NYSHRL and NYCHRL discrimination claims arising out of the Union's handling of Cruz's workload complaints in Cases 40014-18 and 41042-18. *Cruz v. SEIU Loc. 32BJ*, No. 19 Civ. 11836, 2021 WL 3604661, at *2 (S.D.N.Y. Aug. 12, 2021). On October 6, 2021, the Court denied Cruz's motion for leave to file a Fourth Amended Complaint.

II.  **STANDARD**

Summary judgment is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Electra v. 59 Murray Enters.*, 987 F.3d 233, 248 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

When a party appears pro se, a court must construe "the submissions of a pro se litigant . . . liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted) (collecting cases); *accord Turner v. Naphcare*, No. 19 Civ. 412, 2020 WL 8988671, at *1 (S.D.N.Y. May 13, 2020).

III.  **DISCUSSION**

A.  **Title VII Claims**

Defendants are granted summary judgment on the Title VII claim because Plaintiff has not proffered evidence from which a reasonable jury could infer that the Union acted with discriminatory intent or arbitrarily when it determined not to arbitrate her grievances.

Title VII makes it unlawful for employers "to discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "Under federal common law, unions owe their members a duty of fair representation, which derives 'from the union's statutory role as

exclusive bargaining agent.'" *Dillard v. SEIU Local 32BJ*, No. 15 Civ. 4132, 2015 WL 6913944, at *4 (S.D.N.Y. Nov. 6, 2015) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991)).  A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387-88 (2d Cir. 2015) (citing *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 67). "[W]here a plaintiff claims that a union violated Title VII based on its failure to represent a member, courts in this Circuit generally incorporate the duty of fair representation as one of the elements of the alleged Title VII violation." *Bell v. SL Green Realty Corp.*, No. 19 Civ. 8153, 2021 WL 516575, at *7 (S.D.N.Y. Feb. 11, 2021).

To survive a summary judgment motion, courts apply the *McDonnell Douglas* burden-shifting analysis.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107-08 (2d Cir. 2019).  First, a plaintiff must establish a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019).  Adverse employment actions include termination, demotion, a decrease in wage or salary, a material loss of benefits, and other actions that may be unique to a particular situation.  *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71-72 (2d Cir. 2019); *Gilani v. Teneo, Inc.*, No. 20 Civ. 1785, 2021 WL 3501330, at *19 (S.D.N.Y. August 4, 2021).

If the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to produce a legitimate nondiscriminatory reason for the adverse action.  *McDonnell*, 411 U.S. at 802; *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016).  If the

defendant provides a nondiscriminatory explanation for the adverse action, then the burden shifts back to the plaintiff to "establish, by a preponderance of evidence, that [Defendants'] justification is a pretext for discrimination." *Lenzi*, 944 F.3d at 108 (quoting *Legg v. Ulster Cty.*, 820 F.3d 67, 73-74 (2d Cir. 2016)).  The defendant's motion for summary judgment is granted unless the plaintiff proffers sufficient evidence to permit a rational fact finder to infer that race was a "motivating factor" for the defendant's employment decision, i.e., that the plaintiff was discriminated against, at least in part because of her protected status.  *See Lenzi*, 944 F.3d at 108.

### 1. Prima Facie Case

The Union challenges only the fourth element of Cruz's prima facie case, arguing that she has not proffered sufficient evidence to demonstrate discriminatory animus.  *See Menaker*, 935 F.3d at 30.  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Cruz has met this burden because she has identified a relevant comparator outside of her protected class who was treated differently than she was.  To establish an inference of discrimination on these grounds, Cruz must show that the Union treated her less favorably than a similarly situated employee outside her protected class and "must show that she was similarly situated in all material respects to the individual with whom she seeks to compare herself." *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014); *see also Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010).  For example, for a claim alleging discriminatory termination, "[a]n employee is similarly situated to co-employees if they were (1) subject to the same

6

performance evaluation and discipline standards and (2) engaged in comparable conduct." *Id*. (internal quotation marks omitted)).

Here, as evidence of discrimination, Cruz points to the Union's decision to arbitrate the grievance of her non-Hispanic colleague, Borici, but not her own. Borici and Plaintiff were employed in the same building as office cleaners. Both were union members. Both filed grievances complaining that their assigned work areas exceeded the CBA's 4,000 square feet per hour maximum. Yet, the union chose to arbitrate Borici's grievance and not Plaintiff's.

The Union argues that Borici is not an appropriate comparator because she was not similarly situated in "all material respects," *see Raspardo*, 770 F.3d at 126, because Borici's assigned work area was much larger than Cruz's assigned work area. Because that issue and the specific facts of the grievance go to the heart of the Union's decision to arbitrate Borici's grievance but not Plaintiff's, the issue seems more appropriate to consider at second and third steps of the *McDonnell-Douglas* framework. "As [the Second Circuit has] often emphasized, the burden of establishing this prima facie case in employment discrimination cases is minimal." *Lenzi*, 944 F.3d at 107; *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (describing a plaintiff's burden as "*de minimis*" at the prima facie stage (internal quotation marks omitted)). Assuming that Cruz has met this minimal showing, and whether Plaintiff's case falters at the first or third step of the burden shifting analysis, the evidence is ultimately insufficient to support a finding of discriminatory intent, as discussed below.

### 2. Non-Discriminatory Reason and Discrimination as a Motivating Factor

The Union has satisfied the second step of the *McDonnell Douglas* inquiry by proffering evidence that the Union chose not to arbitrate for a non-discriminatory reason -- namely, Borici's

work area was much larger than Cruz's work area, and the Union therefore believed Borici's claim would be more likely to succeed at arbitration and set a better precedent.

Given this proffer, the burden then shifts to Cruz to "raise[] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision [not to arbitrate her grievance] was based, at least in part, on [her race or national origin]." *Holcomb v. Iona Coll.*, 521 F.3d 130, 141 (2d Cir. 2008); *see Lenzi*, 944 F.3d at 108. The Second Circuit has "stress[ed]" that a plaintiff who "claims that the employer acted with mixed motives is not *required* to prove that the employer's stated reason was a pretext." *Holcomb*, 521 F.3d at 141-42. Rather, "[a] plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that [discrimination] was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Id.* at 142 (internal quotation marks omitted).

Plaintiff has not made this showing. She argues that the Union's discriminatory animus should be inferred from its decision to arbitrate Borici's workload grievance but not arbitrate Plaintiff's own grievance when both employees were assigned similarly sized work areas. But no reasonable jury could find discriminatory animus on the present record because Plaintiff's only evidence of discrimination is the disparate treatment of Borici. But Borici is not sufficiently comparable to Plainitff to give rise to an inference of discriminatory intent. Borici was not "similarly situated in all material respects." *See Mandell v. Cnty of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

There is no genuine dispute of material fact that Borici's assigned work area was much larger than Cruz's work area. According to the Union's calculations, Cruz was assigned approximately 33,742 cleanable square feet, although the Union asserts that this figure includes

8

an error that added 685 square feet to Cruz's total cleanable space. The Union representatives measured Borici's assigned area as approximately 40,665 square feet. Cruz was present while the Union measured each space. At her deposition, Cruz testified that she did not voice any contemporaneous objections to Barry-Godin's measurements of her assigned work space; kept her own tally of the measurements while Barry-Godin measured and the total that Cruz came up with was "around the same" as Barry-Godin's total. Cruz also testified that one of Borici's assigned floors, C2, was the biggest in the building.

Cruz testified that Barry-Godin should have considered two pantries -- which each took about twenty-five minutes to clean -- included in her assigned work area when considering whether Cruz's overall workload was appropriate. But Cruz offers no evidence of how much additional space -- if any -- this would have added to her total assignment. Instead, Cruz relies on a document entitled "Building Specifications" for 300 Madison Avenue to argue that she was assigned 47,638 square feet to clean. That document does not support Cruz's allegation that she was assigned to clean 47,638 square feet because it lists only the square footage of each floor without considering which portions of the floor were unusable (e.g., support columns) and therefore not part of Cruz's assigned area. Regardless of the precise area she was assigned, the record does not support the conclusion that Cruz's excessive work area was comparable to Borici's excessive work area. Without legally sufficient comparator evidence, Plaintiff's Title VII claim fails as a matter of law. *See Holcomb*, 521 F.3d at 141-42.

That the Union did not act with discriminatory intent is buttressed by the Union's advocacy on Plaintiff's behalf regarding excessive or inappropriate work. In around January 2019, the Union argued to ABM that it should provide Cruz with additional compensation for her excessive workload over the prior twenty months, but ABM refused. In 2018, when Plaintiff

9

complained about having to dust an area by a staircase, the Union communicated with ABM on her behalf and Cruz was relieved of that work. For all of the reasons discussed above, no reasonable jury could find that the Union's decision not to arbitrate the two grievances at issue was the product of discrimination based on race and national origin.

### 3. Fair Dealing

The duty of fair representation is a "statutory obligation" under the NLRA, requiring a union "to serve the interests of all members without hostility or discrimination, . . . to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Fowlkes*, 790 F.3d at 387-88 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177 (1967). A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith. *Air Line Pilots Ass'n, Int'l,* 499 U.S. at 67.

The Union also proffers an explanation of why its decision was not arbitrary or in bad faith:

> [The Union] decided not to pursue Cruz's grievances in Cases 40014-18 and 41042-18 to arbitration because it decided that an arbitrator would be unlikely to award compensatory damages to Cruz, and that an unfavorable arbitration award could harm all works covered by the RAB contractors agreement. The Union has often been able to convince employers to reduce individual employees' workloads below the 4,000 square foot per hour threshold, and the Union's fear was that an unfavorable arbitration award could embolden employers to take a harder line on workload claims.

Cruz offers no evidence to rebut this claim.

Because the Union offered a rational explanation for its action, and there is no evidence of discriminatory intent, the Union's summary judgment motion is granted as to Cruz's Title VII discrimination claim.

B.     **NYSHRL and NYCHRL Claims**

The Union's summary judgment motion is granted as to Cruz's NYSHRL and NYCHRL discrimination claims for the same reasons that summary judgment is granted on the Title VII claim as discussed above.[1]

The NYSHRL makes it unlawful "[f]or an employer . . . because of an individual's . . . race, creed, color, national origin . . . to discriminate against such individual in compensation or in terms, conditions, or privileges of employment." N.Y. Exec. Law § 296(1)(a). The NYSHRL discrimination claim in this case is treated as analytically identical to federal discrimination claims under Title VII. *See Lenzi*, 944 F.3d at 107 n.7.[2] Summary judgment is granted to the Union on the NYSHRL discrimination claim because Cruz has not established a prima facie case of discrimination.

For the same reasons, the NYCHRL claim also fails. The NYCHRL is less demanding of a claimant than the pre-amendment NYSHRL, and Cruz may prove an adverse employment action simply by showing that she was treated "less well." *See Emamiam v. Rockefeller Univ.*, 971 F.3d 380, 389-390 (2d Cir. 2020) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)); *Hamburg v. N.Y.U. Sch. of Med.*, 155 A.D.3d 66, 73 (1st

---

[1] In its moving papers, the Union also argues that summary judgment is appropriate on Cruz's NYSHRL and NYCHRL claims because those claims are preempted by Section 301(a) of the Labor Management Relations Act of 1947 ("Section 301"). The Court declines to address on the merits Defendants' untimely motion to reconsider the August 12, 2021, Opinion and Order which concluded that Cruz's NYCHRL and NYSHRL are not preempted by Section 301 "because the resolution of those claims does not depend upon the meaning of the CBA." *Cruz v. SEIU Local 32BJ*, No. 19 Civ. 11836, 2021 WL 3604661, at *5 (S.D.N.Y. Aug. 12, 2021).

[2] The more stringent standard adopted in the October 11, 2019, amendment to the NYSHRL -- specifically, to New York Executive Law § 296(1)(h) -- is inapplicable here, as the amendment applies only where "the relevant conduct . . . all occurred before the effective date of the amended law." *See Maiurano v. Cantor Fitzgerald Secs.*, No. 19 Civ. 10042, 2021 WL 76410, at *3, n.2 (S.D.N.Y. Jan. 8, 2021). In this case, the relevant conduct began in 2018.

Dep't 2017); *Sanderson-Burgess v. City of New York*, 173 A.D.3d 1233, 1235 (2nd Dep't 2019). Nevertheless, the NYCHRL requires Cruz to show that "the conduct is caused by a discriminatory motive" and that she was "treated less well at least in part because of her [race or national origin]." *Emamiam*, 971 F.3d at 390 (quoting *Mihalik*, 715 F.3d at 110); *accord Brown v. Montefiore Med. Ctr.*, No. 19 Civ. 11474, 2021 WL 1163797, at *8 (S.D.N.Y. Mar. 25, 2021). Viewing the evidence in the light most favorable to Cruz, no reasonable jury could find that the Union treated Cruz less well because of discriminatory animus based on Cruz's race or national origin. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (dismissing a NYCHRL case for failing to show that plaintiff was fired because of her protected characteristics). The Union's motion for summary judgment on the NYSHRL and NYCHRL claims are granted.

## IV. CONCLUSION

For the reasons stated above, the Union's motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 176 and to close the case.

Dated: September 21, 2022
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**